UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

T-MOBILE WEST LLC,

    Plaintiff,

v.

THE CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.

Case No. 20-cv-08139-SI

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Re: Dkt. Nos. 29, 31

On March 12, 2021, this Court heard oral argument on motions by plaintiff T-Mobile West LLC ("T-Mobile") for summary judgment and preliminary injunction. For the reasons stated below, the Court **GRANTS IN PART** T-Mobile's motion for summary judgment and **GRANTS IN PART** T-Mobile's motion for preliminary injunction.

## BACKGROUND

### I. The Spectrum Act and Related Regulations

Under Section 6409(a) of the Middle Class Tax Relief and Job Creation Act of 2012 ("Spectrum Act"), "[a] State or local government may not deny, and shall approve, any eligible facilities request for a modification of an existing wireless tower or base station that does not substantially change the physical dimensions of such tower or base station." 47 U.S.C. § 1455. Local governments must approve eligible facilities requests within 60 days of submission. 47 C.F.R. § 1.6100(c)(2). The 60-day period may only be tolled either by mutual agreement between the local government and applicant or if the local government determines that the application is incomplete. 47 C.F.R. § 1.6100(c)(3). If a local government fails to timely approve or deny an eligible facilities request within the 60-day period, "the eligible facilities request shall be deemed granted. The

1 deemed grant does not become effective until the applicant notifies the applicable reviewing
2 authority in writing after the review period has expired (accounting for any tolling)." 47 C.F.R.
3 § 1.6100(c)(4). Applicants subject to adverse decisions by local governments may bring claims
4 related to this process in any court of competent jurisdiction within 30 days of such decision. 47
5 U.S.C. § 332(c)(7)(B)(5); 47 C.F.R. § 1.6100(c)(5).

6 On October 21, 2014, the Federal Communications Commission ("FCC") issued an order
7 adopting rules to implement and enforce the Spectrum Act. *In the Matter of Acceleration of*
8 *Broadband Deployment by Improving Wireless Facilities Siting Policies*, FCC 14-153 ("FCC
9 Order") ¶ 15. According to the FCC Order, the Spectrum Act reflected Congress's goal of
10 "facilitate[ing] the rapid deployment of wireless infrastructure and promot[ing] advanced wireless
11 broadband services." *Id*. ¶ 204.

13 **II.     Factual Background**
14 T-Mobile provides wireless telecommunications services throughout the United States.
15 Wheeler Decl. ¶ 4. In San Francisco, T-Mobile utilizes a network of "cell sites" to provide
16 telecommunications services. *Id*. ¶ 6. The cell sites require regular maintenance, such as adding or
17 modifying antennas and other technology equipment, to provide services and increase coverage,
18 capacity, and reliability. *Id*. ¶¶ 8-13, 18.

19 T-Mobile must obtain permits from the City and County of San Francisco and the City and
20 County of San Francisco Department of Building Inspection (collectively, "defendants") to install
21 or modify T-Mobile's cell sites and wireless facilities. Dkt. No. 36 at 2. Therefore, in 2020, T-
22 Mobile submitted Eligible Facilities Applications to defendants for the purpose of upgrading its cell
23 sites for more reliable cell towers. Kmetz Decl. ¶ 4.

24 On October 20, 2020, T-Mobile notified defendants that defendants failed to approve 27 of
25 T-Mobile's applications and, pursuant to 47 C.F.R. § 1.1600, the 27 applications are "deemed
26 granted." *Id*. ¶ 8. After T-Mobile's October notification, defendants continued to review for
27 approval 19 of the 27 applications. *Id*. ¶ 9. On November 3, 2020, T-Mobile notified defendants
28 that defendants failed to approve an application and, pursuant to 47 C.F.R. § 1.1600, the application

is "deemed granted." *Id*. ¶ 12. Defendants have not acted on this application. *Id*. Finally, on December 28, 2020, T-Mobile notified defendants that defendants failed to approve 6 of T-Mobile's applications and, pursuant to 47 C.F.R. § 1.1600, the 6 applications are "deemed granted." *Id*. ¶ 13.

In 2020, T-Mobile submitted a total of 81 Eligible Facilities Applications. Kmetz Decl. ¶ 4. At the filing of this action, defendants granted 47 of T-Mobile's applications. *Id.* ¶ 14. Of the 47 approved applications, defendants issued permits for 11 of T-Mobile's applications within 60 days of the application's submission. *Id*. For the applications where defendants failed to take action within 60 days of T-Mobile's submission, T-Mobile notified defendants in writing that T-Mobile's applications are deemed granted pursuant to 47 U.S.C. § 1455(a) and 47 C.F.R. § 1.1600. *Id*. ¶¶ 10-13. T-Mobile currently has 34 pending applications with defendants. *Id*. ¶ 15.

On February 2, 2021, T-Mobile filed a motion for summary judgment and motion for preliminary injunction.[1] Dkt. Nos. 29, 31. T-Mobile argues that defendants violated the Spectrum Act by failing to timely approve T-Mobile's applications. Dkt. No. 29 at 1-2. T-Mobile requests an order from the Court that (1) as a matter of law, defendants are required to issue permits for Eligible Facilities Request applications after T-Mobile issued the deemed granted notice and (2) as a matter of law, defendants are required to approve T-Mobile's pending and future Eligible Facilities Request applications within 60 days of submission. Dkt. No. 29 at 3. T-Mobile also requests a preliminary injunction ordering defendants to issue T-Mobile permits for T-Mobile's 14 pending applications. Dkt. No. 31 at 1.

**LEGAL STANDARD**

**I.   Summary Judgment**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating

---

[1] T-Mobile filed a request for judicial notice of court documents in support of T-Mobile's motions for summary judgment and preliminary injunction. Dkt. No. 39. Defendants did not submit an opposition. Accordingly, the Court GRANTS T-Mobile's request for judicial notice.

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

The court's function on a summary judgment motion is neither to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255.

## II.    Preliminary Injunction

To obtain a preliminary injunction, plaintiffs must establish: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20, (2008) (citations omitted).

As an alternative avenue to a preliminary injunction, the Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can [also] support issuance of an injunction, assuming the other two elements of the Winter test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir.2011). "Serious questions" refers to questions "which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution

of the questions or execution of any judgment by altering the status quo." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir.1991).

## DISCUSSION

### I.     T-Mobile's Motion for Summary Judgment

T-Mobile argues that the Spectrum Act requires defendants to issue permits for T-Mobile's deemed granted applications. Dkt. No. 29 at 14-24. Defendants argue the Spectrum Act violates Tenth Amendment's anticommandeering doctrine because "the Constitution 'confers upon Congress the power to regulate individuals, not states.'" Dkt. No. 36 at 6-7. Defendants do not oppose "a judicial declaration that [T-Mobile's] deemed granted notices are effective." *Id*. at 8. However, defendants assert that the Spectrum Act does not create a duty for local government to affirmatively issue permits for deemed granted applications. *Id*.

#### A.     Tenth Amendment's Anticommandeering Doctrine

Defendants argue that the Spectrum Act violates the Tenth Amendment anticommandeering doctrine because Congress may only regulate individuals, not states. Dkt. No. 26 at 5-6. T-Mobile argues that the Spectrum Act does not require defendants to enact or administer a federal regulatory scheme and defendants are estopped from raising their Tenth Amendment argument. Dkt. No. 38 at 4-7.

The anticommandeering doctrine reflects the Constitution's "decision to withhold from Congress the power to issue orders directly to the States." *Murphy v. Nat. Collegiate Athletic Ass'n*., 138 S.Ct. 1461, 1475 (2018). "[T]he Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." *United States v. California*, 921 F.3d 865, 888 (9th Cir. 2019) (citing *Printz v. United States*, 521 U.S. 898, 925 (1997). In *Murphy*, the Supreme Court held that the anticommandeering doctrine prohibits federal statutes that "commanded state legislatures to enact or refrain from enacting state law." *See Murphy*, 138 S.Ct. at 1478.

The Spectrum Act states, in relevant part, "a State or local government may not deny, and

1    shall approve, any eligible facilities request for a modification of an existing wireless tower or base
2    station that does not substantially change the physical dimensions of such tower or base station."
3    47 U.S.C. § 1455(a). Although the statute regulates a state's review of eligible facilities requests,
4    Congress may "establish requirements for continued state activity" because "there is nothing
5    unconstitutional about Congress' requiring certain procedural minima as [a state] body goes about
6    undertaking [Congress's] tasks." *F.E.R.C. v. Mississippi*, 456 U.S. 742. 769-772 (1982). Moreover,
7    the Spectrum Act does not direct local government to enact or refrain from enacting regulations
8    regarding modifications to wireless towers or base stations. *Compare Reno v. Condon* 528 U.S. 141,
9    145 (2000) (finding no anticommandeering doctrine violation where federal law restricted
10   disclosure and dissemination of personal information in applications for driver's licenses) *with*
11   *Murphy*, 138 S.Ct. at 1478 (finding violation of anticommandeering doctrine because provision
12   "unequivocally dictates what a state legislature may or may not do . . . as if federal officers were
13   installed in state legislative chambers and were armed with the authority to stop legislators from
14   voting on any offending proposals."). Accordingly, the Court finds that the Spectrum Act does not
15   violate the anticommandeering doctrine. Given the Court's ruling, the Court declines to rule on
16   whether defendants are estopped from asserting its Tenth Amendment argument.

### B. The Spectrum Act

Defendants argue that the Spectrum Act does not impose affirmative obligations on defendants to issue permits for T-Mobile's applications. Dkt. No. 36 at 9-13.

The FCC's Order on the Spectrum Act established "a deemed granted remedy for cases in which . . . [a] municipal reviewing authority fails to issue a decision within 60 days (subject to any tolling[]) on an application submitted pursuant to the Spectrum Act." *In the Matter of Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, FCC 14-153 ("the Order") ¶ 226. The FCC Spectrum Act only prohibits State or local governments from *denying* qualifying applications. *Id*. at ¶ 227. The FCC Order stated,

> [T]he deemed granted approach does not deprive States and localities
> of the opportunity to determine whether an application is covered;
> rather, it provides a remedy for a failure to act within the fixed but
> substantial time period within which they must determine, on a non-

> discretionary and objective basis, whether an application fits within the parameters of Section 6409(a).

*Id*. at ¶ 232.

In *Montgomery*, the Fourth Circuit, in holding that the "deemed granted" remedy established by the FCC's Order on the Spectrum Act did not violate the Tenth Amendment, the Fourth Circuit stated,

> As a practical matter, the [FCC] Order . . . ***does not require the states to take any action at all***, because the ***"deemed granted" remedy obviates the need for the states to affirmatively approve applications***. Instead, the "deemed granted" procedure allows the applications to be granted by default if the state does not affirmatively approve them within sixty days. As the FCC points out in its Order, ***the point of the "deemed granted" provision is to ensure that collocation applications are not mired in the type of protracted approval processes that the Spectrum Act was designed to avoid*** . . . Moreover, the "deemed granted" procedure provides a remedy to ensure that states do not circumvent statutory requirements by failing to act upon applications. [] The purpose and effect of Section 6409(a) is to bar states from interfering with the expansion of wireless networks. To achieve that end, the Act preempts local regulation of collocations and bars states from denying facility modification applications that meet certain standards.

*Montgomery County*, *MD. v. F.C.C.*, 811 F.3d 121, 128 (4th Cir. 2015) (emphasis added).

Accordingly, the Court **GRANTS IN PART** plaintiff's request for summary judgment. The Court holds that T-Mobile's deemed granted applications are now to be treated as granted in accordance with under the Spectrum Act. Therefore, T-Mobile's installations pursuant to T-Mobile's granted applications are and shall be treated as legal by defendants herein. *See id*. at 129 (explaining the Spectrum Act's deemed granted remedy "preempt[s] state regulation of wireless towers" and "permits applicants to initiate a declaratory judgment action to seek some form of judicial imprimatur for an application that has been deemed granted.").

## II.     Plaintiff's Motion for Preliminary Injunction

T-Mobile filed a motion for preliminary injunction requesting the Court order defendants to issue permits for T-Mobile's pending Eligible Facilities Request applications that have been deemed granted under the Spectrum Act. Dkt. No. 31 at 1. Defendants argue that T-Mobile is not entitled to an order that requires defendants to affirmatively issue permits. Dkt. No. 36 at 13. Defendants

7

1    also argue that T-Mobile has failed to demonstrate that it will suffer any harm if an injunction is not
2    issued because T-Mobile could begin modifications for the cell sites with deemed granted
3    applications. *Id*. at 14.

4    The Spectrum Act's "provides a remedy for a [State's or locality's] failure to act within the
5    fixed but substantial time period within which they must determine, on a non-discretionary and
6    objective basis, whether an application fits within the parameters of [the Spectrum Act]. " *In the*
7    *Matter of Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*,
8    FCC 14-153 ("FCC Order") ¶ 232.  Because of "the importance of expeditious action with regard
9    to the application process and infrastructure deployment," a party may request a court "for an
10   injunction granting the application." *Id*. ¶ 284.

11   The FCC Order stated that injunctive relief depends on "the specific facts of individual
12   applications," and  that it "may be appropriate in many cases in light of the balance of equities,
13   including the public interest reflected in the statute of promoting rapid but responsible wireless
14   facility deployment." *Id.*  "Moreover, in the case of a failure to act within the reasonable timeframes
15   . . . and absent some compelling need for additional time to review the application, [the FCC]
16   believe[s] that it would also be appropriate for the courts to treat such circumstances as significant
17   factors weighing in favor of such relief." *Id*.

18   T-Mobile demonstrated likelihood of success on the merits of their claim that defendants
19   violated the Spectrum act by failing to act on T-Mobile's application. *See* Dkt. No. 30-21 (Ex. U)
20   (identifying each of T-Mobile's applications with application and missing approval dates).  During
21   the March 12, 2021 hearing, T-Mobile indicated that it would suffer harm without injunctive relief
22   if defendants prevent T-Mobile from making installations or modifications pursuant to T-Mobile's
23   deemed granted applications.  Because the Spectrum Act's "deemed granted remedy obviates the
24   need for the states to affirmatively approve applications," the Court narrows the scope of injunctive
25   relief.  Such relief will serve the public's interest in "promoting rapid but reasonable wireless facility
26   deployment." FCC Order ¶ 284.

27   Accordingly, the Court **GRANTS** T-Mobile's motion for injunctive relief, as follows:  (1)
28   the deemed granted applications are in law as effective as granted applications; and (2) defendants

8

the City and County of San Francisco and the City and County of San Francisco Department of Building Inspection are estopped from imposing penalties or in any way preventing T-Mobile from proceeding with installations for T-Mobile's deemed granted applications.

**IT IS SO ORDERED**.

Dated: March 19, 2021

_____
SUSAN ILLSTON
United States District Judge