DAVID CHIU, State Bar #189542
City Attorney
WAYNE SNODGRASS, State Bar #148137
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:     (415) 554-4675
Facsimile:     (415) 554-4699
E-Mail:        wayne.snodgrass@sfcityatty.org

Attorneys for Defendants
THE CITY AND COUNTY OF SAN FRANCISCO and
THE CITY AND COUNTY OF SAN FRANCISCO
DEPARTMENT OF BUILDING INSPECTION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T-MOBILE WEST LLC, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, and THE CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF BUILDING INSPECTION; public entities organized and existing under the laws of the State of California,<br><br>Defendants. | Case No. 4:20-cv-08139-JST<br><br>**DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S THIRD CAUSE OF ACTION AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date:  September 1, 2022<br>Time:          2:00 p.m.<br>Place:         Ctrm. 6, 2nd Fl.<br><br>Complaint Filed:  November 18, 2020<br>Trial Date:       Not Set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii
NOTICE OF CROSS-MOTION AND CROSS-MOTION ............................................................... 1
MEMORANDUM OF POINTS AND AUTHORITIES .................................................................... 2
ISSUES TO BE DECIDED ................................................................................................................ 2
INTRODUCTION ............................................................................................................................... 2
BACKGROUND ................................................................................................................................. 3
    I.    PRIOR PROCEEDINGS IN THIS CASE ........................................................................ 3
    II.    T-MOBILE'S INSTANT MOTION FOR SUMMARY JUDGMENT AND THE CITY'S CROSS-MOTION ........................................................................................ 4
ARGUMENT ....................................................................................................................................... 5
    I.    T-MOBILE IS NOT ENTITLED TO MODIFY ITS WIRELESS INSTALLATION AT 2499 LOMBARD STREET, BECAUSE THAT INSTALLATION WAS UNLAWFULLY INSTALLED WITHOUT A PERMIT ........................................................................................................................... 5
        A.    Section 6409 Does Not Apply To A Carrier's Requests To Modify A Wireless Facility That Was Not Reviewed And Approved Under Available Zoning Processes. .................................................................................. 5
        B.    The Wireless Facility At 2499 Lombard That T-Mobile Now Seeks To Modify Is Unpermitted And Was Installed Without The City's Approval. .......................................................................................................... 7
    II.    T-MOBILE IS NOT ENTITLED TO MODIFY ITS WIRELESS INSTALLATIONS AT 491 HAIGHT STREET AND 3000-3019 MISSION STREET, BECAUSE THOSE INSTALLATIONS WERE ONLY APPROVED AS AN EXCEPTION TO THE CITY'S PLANNING CODE BECAUSE OF THEIR SMALL SIZE ................................................................................................. 9
    III.    DEFENDANTS DO NOT OPPOSE T-MOBILE'S MOTION TO THE EXTENT IT SEEKS A DECLARATION OF "DEEMED GRANTED" STATUS WITH RESPECT TO T-MOBILE'S APPLICATIONS TO MODIFY EXISTING FACILITIES LOCATED AT 5630 MISSION STREET, 1135 EVANS AVENUE, AND 965-985 GENEVA AVENUE ................................... 12
    IV.    THIS COURT SHOULD DENY T-MOBILE'S MOTION TO THE EXTENT T-MOBILE REQUESTS THIS COURT TO ORDER DEFENDANTS TO AFFIRMATIVELY ISSUE PERMITS FOR ANY LOCATION ........................ 12
CONCLUSION .................................................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES**

*Montgomery County, Md. v. F.C.C.*
   (4th Cir. 2015) 811 F.3d 121 ..................................................................................2, 3, 4, 13, 14

*Portland Cellular Partnership v. Inhabitants of Town of Cape Elizabeth*
   (D. Maine 2015) 139 F.Supp.3d 479 ......................................................................................6, 7

**STATUTES**

47 C.F.R.
   § 1.40001(b)(1)(iii) ......................................................................................................................7
   § 1.6100 .......................................................................................................................2, 3, 5, 14
   § 1.6100(b) ................................................................................................................................2, 11
   § 1.6100(b)(1)(iii) ....................................................................................................................6, 10
   § 1.6100(b)(5) ..........................................................................................................................6, 9, 10

47 U.S.C.
   § 1455 ........................................................................................................................................2, 3, 5
   § 1455(a)(1) ..................................................................................................................................5, 10

**OTHER AUTHORITIES**

*Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, Report and
   Order, 29 FCC Rcd 12865, ¶ 174 (2014) ..............................................................................6, 14

**SAN FRANCISCO CODES AND REGULATIONS**

S.F. Planning Code § 102 ...................................................................................................10, 11

# NOTICE OF CROSS-MOTION AND CROSS-MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 1, 2022, at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, defendants City and County of San Francisco and the San Francisco Department of Building Inspection (collectively, "Defendants") will, and hereby do, move the Court for an order granting summary judgment in defendants' favor on the Third Cause of Action in the Third Amended Complaint of plaintiff T-Mobile West LLC ("Plaintiff") with respect to Plaintiff's applications to modify wireless facilities currently located at 491 Haight Street, 3000-3019 Mission Street, and 2499 Lombard Street.[1]

Defendants' motion is made on the ground that there are no triable issues of material fact with regard to the above-listed applications, and that as a matter of law, Defendants have not violated 47 U.S.C. § 1455(a) and Plaintiff is not entitled to any relief under its Third Cause of Action with respect to those applications.

Defendants' motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the attached Declaration of Elizabeth Watty including the exhibits thereto; on the documents on file with the Court herein; and on such further evidence and argument as the Court may consider at the hearing on this Motion.

Dated: July 14, 2022

DAVID CHIU
City Attorney

By: /s/*Wayne K. Snodgrass*
WAYNE K. SNODGRASS
Attorneys for Defendants
THE CITY AND COUNTY OF SAN FRANCISCO, and
THE CITY AND COUNTY OF SAN FRANCISCO
DEPARTMENT OF BUILDING INSPECTION

---

[1] Defendants do not seek summary judgment as to Plaintiff's Third Cause of Action to the extent it seeks relief concerning Plaintiff's applications to modify wireless facilities currently located at 5630 Mission Street, 1135 Evans Avenue, and 965-985 Geneva Avenue. Defendants also do not oppose Plaintiff's Motion for Summary Judgment to the extent it seeks "deemed granted" status for those applications.

# MEMORANDUM OF POINTS AND AUTHORITIES

## ISSUES TO BE DECIDED

1. When the City granted "accessory use" approval to T-Mobile and other carriers' applications seeking to install small wireless facilities without public hearings as an accommodation to the carriers, and even in circumstances where the Planning Code's requirements for "accessory use" approval would not otherwise apply, were such applications "approved under the applicable zoning or siting process, or under another State or local regulatory review process" within the terms of 47 C.F.R. § 47 C.F.R. § 1.6100(b)?

2. Under 47 C.F.R. § 1.6100(b), must the City grant an application filed by T-Mobile that seeks to modify a wireless installation that was not lawfully permitted in the first instance?

3. Where 47 C.F.R. § 1.6100's "deemed granted" remedy "does not require the states to take any action at all," and "obviates the need for the states to affirmatively approve applications" (*Montgomery County, Md. v. F.C.C.* (4th Cir. 2015) 811 F.3d 128), is T-Mobile entitled to an order compelling defendants to affirmatively approve T-Mobile's applications?

## INTRODUCTION

These cross-motions for summary judgment concern the application of Section 6409 of the Spectrum Act and its implementing regulations, found at 47 C.F.R. §1.6100, to six applications that Plaintiff T-Mobile West LLC ("T-Mobile") filed with defendant City and County of San Francisco ("the City"), seeking permits to modify wireless telecommunications facilities already located at six locations within the City. But while T-Mobile claims that the wireless facilities already at those locations each constitute an "existing … base station" under Section 6409 and its implementing regulations, the undisputed factual record on these cross-motions shows otherwise. Most conspicuously, the wireless facilities currently found at one of those six locations were unlawfully installed without a permit. T-Mobile's own engineering drawings relating to that permit application acknowledge that many items of wireless equipment currently found that that site need to be "legalized." And at two other locations, the facilities were review and approved not under the City's applicable zoning, siting, or other regulatory process, but through a wireless-specific exception to those normal processes. The facilities currently found at those three locations, therefore, do not

constitute "existing … base stations" under the federal statute and regulations, and it is the City – not T-Mobile – that is entitled to summary judgment as to those three sites.

With respect to the remaining three sites, because the facilities currently at those sites were lawfully reviewed and approved through the City's normal zoning processes, the City does not oppose T-Mobile's Motion, to the extent it asks this Court to declare that T-Mobile's applications relating to those sites are "deemed granted" and must be treated by the City as lawfully granted under the Spectrum Act.

Finally, T-Mobile asks this Court, as it asked the Court in its prior Motion for Summary Judgment and Motion for Preliminary Injunction, not only to declare that its applications are entitled to "deemed granted" status and must be treated as lawfully approved, but also to order the City to affirmatively issue T-Mobile the permits it seeks. But 47 C.F.R.'s "deemed granted" remedy – the only remedy provided in the regulatory scheme – "obviates the need for the states to affirmatively approve applications," and "does not require the states to take any action at all." (*Montgomery County, Md. v. F.C.C.* (4th Cir. 2015) 811 F.3d 121, 128).) While T-Mobile is entitled to a "deemed granted" order with respect three of the six permits at issue in these cross-motions, it is not entitled to an order commandeering the City's permit issuance departments. This Court, therefore, should reject T-Mobile's request for an order compelling the City to affirmatively issue permits, just as the Court rejected that same request when T-Mobile made it in the context of its earlier motions.

## BACKGROUND

### I.    PRIOR PROCEEDINGS IN THIS CASE

T-Mobile filed this action in November 2020, seeking a declaration that 16 applications it had filed with the City seeking permits to modify existing wireless facilities be "deemed granted" because the City had not acted upon those applications within the 60-day "shot clock" prescribed under Section 6409 of the Spectrum Act, codified at 47 U.S.C. § 1455 ("Section 6409") and the Federal Communications Commission ("FCC") regulation implementing that statute, found at 47 C.F.R. § 1.6100. T-Mobile also sought a court order directing the City to affirmatively issue those permits to T-Mobile. T-Mobile subsequently filed a First Amended Complaint and a Second Amended

Complaint, reflecting both the City's actions in issuing permits in connection with some of T-Mobile's applications, and T-Mobile's submission to the City of additional applications.

In February 2021 T-Mobile moved for summary judgment and for the issuance of a preliminary injunction. In response, the City did not oppose T-Mobile's request that the Court recognize the "deemed granted" status of permit applications that the City had failed to act upon timely.

However, the City opposed T-Mobile's request that the Court order the City to affirmatively issue the permits at issue to T-Mobile. (Defs' Mem. of Pts. & Auth. in Opp. to Mots. SJ & Prelim. Inj. [ECF 36].) The City explained that in *Montgomery County, Md. v. F.C.C.* (4th Cir. 2015) 811 F.3d 121, the Fourth Circuit held that the FCC's order issuing regulations implementing Section 6409 "does not require the states to take any action at all, because the 'deemed granted' remedy obviates the need for the states to affirmatively approve applications." (*Id.*, 811 F.3d at p. 128.)

On March 18, 2021, this Court issued its order granting T-Mobile's motions in part. The Court declined to order the City to affirmatively issue permits to T-Mobile, and instead ordered that "T-Mobile's deemed granted applications are now to be treated as granted in accordance with under the Spectrum Act," and that "T-Mobile's installations pursuant to T-Mobile's granted applications are and shall be treated as legal" by the City. (Order Granting in Part Plntff's Mot. S.J; Granting in Part Plntff's Mot. P.I. [ECF 44].)

## II. T-MOBILE'S INSTANT MOTION FOR SUMMARY JUDGMENT AND THE CITY'S CROSS-MOTION

On October 1, 2021, T-Mobile filed a Third Amended Complaint, adding a Third Cause of Action challenging the City's policy that when a wireless telecommunications facility had been administratively approved as an "accessory use" or as a "micro" facility under the City's Planning Code without any public hearing process, modification of that facility that would result in the creation of a "macro" facility under the Planning Code requires a Conditional Use Authority. T-Mobile's Third Cause of Action references six specific wireless facilities at which it alleged the City applied the foregoing policy and, as a result, required a CUA for T-Mobile to undertake its proposed modifications. T-Mobile now seeks summary judgment with respect to its Third Cause of Action.

The City does not oppose T-Mobile's motion to the extent T-Mobile seeks a declaration of "deemed granted" status with respect to T-Mobile's applications concerning three of the six locations at issue (5630 Mission Street, 1135 Evans Avenue, and 965-985 Geneva Avenue). However, the City opposes T-Mobile's motion, and itself seeks summary judgment, with respect to the remaining three locations (491 Haight Street, 3000-3019 Mission Street, and 2499 Lombard Street). Because the telecommunications facilities currently located at those locations either were never approved by the City at all, or were approved only as a wireless-specific *exception* to normal zoning requirements and as an accommodation to wireless carriers, they do not constitute "existing base stations" under Section 6409(a).

## ARGUMENT

**I. T-MOBILE IS NOT ENTITLED TO MODIFY ITS WIRELESS INSTALLATION AT 2499 LOMBARD STREET, BECAUSE THAT INSTALLATION WAS UNLAWFULLY INSTALLED WITHOUT A PERMIT**

**A. Section 6409 Does Not Apply To A Carrier's Requests To Modify A Wireless Facility That Was Not Reviewed And Approved Under Available Zoning Processes.**

Federal law makes clear that Section 6409 only applies to proposed modifications of existing wireless facilities if, *inter alia,* the local government reviewed and approved those existing facilities under the local government's available local zoning or siting processes. Section 6409 does not entitle a carrier to modify an existing wireless facility if that facility was not lawfully permitted by the local government under such processes – including, most obviously, if the existing facility was illegally installed.

Under Section 6409, state and local governments "may not deny, and shall approve, any eligible facilities request for a modification of an existing wireless tower or base station that does not substantially change the physical dimensions of such tower or base station." (47 U.S.C. § 1455(a)(1).) While Section 6409 does not define its terms "existing" or "base station," its implementing regulations, found at 47 C.F.R. Section 1.6100, define those terms in such a way as to leave no doubt that the statute has no relevance where the existing facility, which the carrier now seeks to modify, was installed without having received the approval of the local government through its relevant review processes.

First, under 47 C.F.R. Section 1.6100 *et seq.*, the term "base station" is defined to

> include[] any structure other than a tower that, at the time the relevant application is filed with the State or local government under this section, supports or houses equipment described in paragraphs (b)(1)(i) through (ii) of this section <u>that has been reviewed and approved under the applicable zoning or siting process</u>, or under another State or local regulatory review process …

(47 C.F.R. § 1.6100(b)(1)(iii) [emphasis added].)  And second, Section 6409's term "existing" is defined in the FCC's regulations to mean only those structures that the local government has reviewed and approved under its applicable zoning or siting process:

> Existing.  A constructed tower or base station is existing for purposes of this section <u>if it has been reviewed and approved under the applicable zoning or siting process</u>, or under another State or local regulatory review process …

(47 C.F.R. § 1.6100(b)(5) [emphasis added].)  Thus, a base station that should have been reviewed and approved under local processes, but was not, is not an "existing" base station under Section 6409.

The FCC has confirmed that under 47 U.S.C. Section 1.6100 *et seq.*, "a facility that was deployed unlawfully does not trigger a municipality's obligation to approve modification requests under Section 6409 (a)."  (*Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, Report and Order, 29 FCC Rcd 12865, ¶ 174 (2014) ["*2014 Infrastructure Order*"].)  As the FCC there explains,

> the term "existing" requires that wireless towers or base stations have been reviewed and approved under the applicable local zoning or siting process or that the deployment of existing transmission equipment on the structure received another form of affirmative State or local regulatory approval . . . . Thus, if a tower or base station was constructed or deployed without proper review, was not required to undergo siting review, or does not support transmission equipment that received another form of affirmative State or local regulatory approval, the governing authority is not obligated to grant a collocation application under Section 6409(a).

(*2014 Infrastructure Order, supra,* 29 FCC Rcd 12865 at ¶ 174.)

At least one court has applied these regulations to hold that where a carrier seeks to modify an existing wireless facility that never received the local government's approval through available local processes, Section 6409's preemption of local authority does not apply.  (*Portland Cellular Partnership v. Inhabitants of Town of Cape Elizabeth* (D. Maine 2015) 139 F.Supp.3d 479, 484, 486 [holding that where tower's owner "never applied for a permit under the Town's zoning ordinance, or under any other State or local regulatory review process, prior to installing the … antenna" that carrier

now proposed to modify, Town "did not err in concluding that the Spectrum Act does not control [carrier's] application"].)  As the court in *Portland Cellular Partnership* explained, "[t]he regulation at issue —47 C.F.R. § 1.40001(b)(1)(iii)—unambiguously attaches the requirement of State or local review and approval to the equipment supported or housed by the structure," and the lack of such review and approval defeated the carrier's attempts to rely on Section 6409.  (*Id*., 139 F.Supp.3d at p. 485, fn. 4.)

T-Mobile acknowledges that Section 6409 only applies to a carrier's proposal to modify "its existing, *lawfully-permitted* wireless installations[.]"  (Plntff Mem. of Pts. & Auth. [ECF 61] at 1:17 [emphasis added].)  As T-Mobile admits, "[t]he FCC has explained that the term 'existing base station' in Section 6409(a) allows local governments to make the initial determination that a non-tower structure … is suitable for location of wireless facilities through the local government's processes," and a "base station is not 'existing' if it 'was constructed or deployed without proper review or was not required to undergo siting review."  (*Id*. at 16:3-5, 9-10 [brackets omitted].)

### B. The Wireless Facility At 2499 Lombard That T-Mobile Now Seeks To Modify Is Unpermitted And Was Installed Without The City's Approval.

One of the wireless facilities that T-Mobile seeks to modify through its Third Cause of Action is located at 2499 Lombard Street, the site of a "Buffalo Wings" restaurant in the marina.  The record before this Court on the parties' cross-motions for summary judgment shows that Section 6409 does not apply to T-Mobile's proposal to modify the wireless facility currently found at that location, because according to the City's records, that current facility was installed without *any* permit – in other words, it is an illegal installation.

As the attached Declaration Of Director of Current Planning Elizabeth Watty in Support of Defendants' Consolidated Opposition to Plaintiff's Motion for Summary Judgment on Plaintiff's Third Cause of Action and Cross-Motion For Partial Summary Judgment ("Watty Declaration") and its exhibits show, the City's records do not contain *any* valid permit for the construction of a wireless facility at 2499 Lombard Street.  While an applicant applied for a permit in 2002 "to install one panel inside a replaced sign and to install associated equipment" (Watty Decl., Ex. A-5), that permit was never completed, the inspections needed to finalize the permit were not performed, and the City's

Department of Building Inspection never issued the required Certificate of Final Completion. As a result, the permit expired in 2006. (*Id*.) Any work undertaken at 2499 Lombard Street pursuant to that 2002 permit application was thus unpermitted, and was performed unlawfully.[2] (Watty Decl., ¶ 7.) This is confirmed by notes on two subsequent applications by T-Mobile to modify that unpermitted wireless facility, which state that there is "no verification site was previously approved" (Watty Decl., Ex. A-7) and that "2499 Lombard Street's original permit to install wireless was never completed." (*Id*., Ex. A-8.)

Notably, even T-Mobile's own exhibits accompanying its moving papers appear to acknowledge that the wireless facility currently located at 2499 Lombard Street is, at least in part, currently illegal. The Declaration of Cia Parker in Support of Plaintiff's Motion for Summary Judgement [sic] on its Third Cause of Action ("Parker Declaration") (ECF 62) includes numerous exhibits relating to each of the wireless facilities at issue in T-Mobile's Third Cause of Action, and hence its motion. Exhibit C to the Parker Declaration consists of "a copy of the engineering plans showing the project description, relevant dimensions, and proposed equipment modifications that were submitted with T-Mobile's application for 2499 Lombard St." (Parker Decl., ¶ 13.) Pages 14-16 and 18 of Exhibit C (ECF 65) are engineering drawings which depict multiple *existing* items of communications equipment that are currently at 2499 Lombard Street and that, according to Exhibit C, have "to be legalized" before they are either removed from the site, or allowed to remain there. Obviously, a facility that was legally permitted has no need to now be "legalized." It thus appears that even T-Mobile's own contractor who prepared the engineering drawings for T-Mobile's application to modify the wireless facility currently found at 2499 Lombard Street was aware that that facility was not legally permitted.

In its Motion, T-Mobile contends that "it is undisputed that for each of the six sites at issue, the City granted T-Mobile permission to install its wireless facilities at the location." (Plntff. Mem. of Pts. & Auth. [ECF 61] at 16:23-25.) This is incorrect. T-Mobile bases that claim solely on paragraphs 90-

---

[2] A scope of work authorized through a permit is only vested, and legally permissible, if it is legally approved, is built in conformity with the approved plans, and is inspected, and if, upon completion of all required inspections, a Certificate of Final Completion is issued by the City's Department of Building Inspection. (Watty Decl., ¶ 7.)

95 of the City's Answer to T-Mobile's Third Amended Complaint (ECF 48), of which paragraph 92 responded to the allegations in T-Mobile's Third Amended Complaint concerning 2499 Lombard Street. (*See* Third Amended Complaint [ECF 47] at ¶ 92.)  But paragraph 92 of the Third Amended Complaint contains no allegation specifically concerning whether or not the facility currently at 2499 Lombard Street was lawfully permitted.  (*Id*.)  And while paragraph 92 does contain allegations that T-Mobile submitted an "eligible facilities request application" to modify its existing wireless transmission facility located on a billboard located at 2499 Lombard Street, and allegations as to how T-Mobile's application proposed to modify "the existing base station" (*id*.), the City, in its answer, specifically denied "that the application at issue was an Eligible Facilities Request," and also specifically denied that that application "proposed to modify a base station, support structure, wireless transmission facility, or other facility that was 'existing' under 47 C.F.R. § 1.6100(b)(5)." (ECF 48 at ¶ 92.)  In sum, the City's Answer provides no support for T-Mobile's claim that it is "undisputed" that the wireless facility currently found at 2499 Lombard Street was lawfully permitted.  To the contrary, the record before this Court shows that that current wireless facility was not permitted.

T-Mobile's application to modify the unpermitted facility located at 2499 Lombard Street is not subject to Section 6409.  Accordingly, T-Mobile's motion with respect to that facility should be denied, and the City's motion should be granted.

## II. T-MOBILE IS NOT ENTITLED TO MODIFY ITS WIRELESS INSTALLATIONS AT 491 HAIGHT STREET AND 3000-3019 MISSION STREET, BECAUSE THOSE INSTALLATIONS WERE ONLY APPROVED AS AN EXCEPTION TO THE CITY'S PLANNING CODE BECAUSE OF THEIR SMALL SIZE

T-Mobile's Third Cause of Action also contends that the City has violated Section 6409 and its implementing regulations with respect to T-Mobile's applications to modify wireless facilities located at 491 Haight Street and 3000-3009 Mission Street in San Francisco, because the City has informed T-Mobile that those applications also are not subject to Section 6409 and cannot be granted unless T-Mobile obtains a Conditional Use Authorization for its proposed modifications.  While the relevant facts concerning those applications and the locations to which they relate are largely, if not entirely, undisputed, those facts entitle the City, not T-Mobile, to summary judgment.

As noted above, Section 6409, by its own terms, only applies to a request to modify "an existing wireless tower or base station." (47 U.S.C. § 1455(a)(1).) Section 6409's implementing regulations define Section 6409's term "base station" as a structure other than tower that, *inter alia,* "has been reviewed and approved under the applicable zoning or siting process," or under another regulatory review process. (47 C.F.R. § 1.6100(b)(1)(iii).) Those regulations also define Section 6409's term "existing" to similarly be limited to those structures that the local government has reviewed and approved "under the applicable zoning or siting process," or under another State or local regulatory review process." (47 C.F.R. § 1.6100(b)(5).)

The undisputed facts show that Section 1.6100(b)'s requirement of review and approval through applicable local zoning, siting, or regulatory review processes is not met here. The City's Planning Department has consistently applied the Planning Code's normal zoning requirements to applications submitted by wireless carriers seeking to construct larger or more obtrusive wireless facilities of the type now codified in the Planning Code as "macro facilities" (S.F. Planning Code § 102 [under "W"]), requiring such applicants in most zoning districts to obtain a Conditional Use Authorization and thus provide a public hearing process. (Watty Decl., ¶ 14.) The applications at issue here – for modification of facilities located at 491 Haight Street and 3000-3019 Mission Street – would result in the construction of such "macro" facilities at those locations. But far from similarly applying normal zoning provisions to applications seeking to install small and unobtrusive wireless antennas and other equipment to structures, San Francisco's Planning Department, since the mid-1990s, has been willing to administratively approve such small wireless facilities as "accessory uses" to the principal use of the property at which they are to be located, thus allowing such applications to forego any public hearing process. (*Id.*) Importantly, the Planning Department has approved applications to install small wireless antennas and similar equipment as "accessory uses" even though the requirement that there by some logical connection between the accessory use and the principal use to which the property is put – a requirement that normally must be met for accessory use approval to be granted[3] – is not necessarily present in the case of a small wireless facility. For example, a wireless

---

[3] San Francisco's Planning Code defines an "accessory use" as "a related minor Use that is either necessary to the operation or enjoyment of a lawful Principal Use or Conditional Use [of property], or appropriate, incidental, and subordinate to any such use, and is located on the same lot."

antenna mounted on the roof of an apartment building is not incidental to the use of that building for residential purposes, because while the mounting of that antenna obviously benefits the wireless carrier, it does not necessarily provide any service or benefit to the building's residents. (Watty Decl., ¶ 15.)

Because the Planning Department has granted "accessory use" approval to applications seeking to install small wireless facilities even if those facilities might not meet the otherwise applicable requirements of an accessory use under the Planning Code, and because such approvals can be issued without requiring a public hearing, such approvals have been granted as an accommodation to wireless carriers, and to facilitate the expansion of wireless services. (Watty Decl., ¶ 14.) Regardless, such approvals have been granted not under the City's normal and applicable zoning and siting processes, but rather as a special, wireless-specific exception to those processes. Accordingly, the particular locations to which initial approvals were granted through these exceptions to the City's normal processes – in this case, 491 Haight Street and 3000-3019 Mission Street – do not qualify as, and should not be treated as, "existing" wireless "base stations" under 47 C.F.R. § 1.6100(b).

To do otherwise, as T-Mobile requests, would be to sanction an end run around the ability of City residents to have input into the siting of macro wireless facilities, such as T-Mobile proposes to construct at those locations, through the simple expedient of T-Mobile first having obtained "accessory use" approval for smaller facilities at those locations. The City urges this Court to construe Section 6409 and its implementing regulations so as to preserve the public's rights to have input into and knowledge of the siting of significant wireless facilities within San Francisco, rather than to inhibit and frustrate those rights. Accordingly, this Court should deny T-Mobile's Motion with regard to 491 Haight Street and 3000-3019 Mission Street, and should instead grant the City's cross-motion with respect to those locations.

---

(S.F. Planning Code § 102 [under "A"].) As one example, a single off-street parking space can be permitted as an "accessory use" at a single-family house, because it provides space for the residents of that house to park, and thus is incidental and appropriate to their use of that property for residential purposes. (Watty Decl., ¶ 13.)

### III. DEFENDANTS DO NOT OPPOSE T-MOBILE'S MOTION TO THE EXTENT IT SEEKS A DECLARATION OF "DEEMED GRANTED" STATUS WITH RESPECT TO T-MOBILE'S APPLICATIONS TO MODIFY EXISTING FACILITIES LOCATED AT 5630 MISSION STREET, 1135 EVANS AVENUE, AND 965-985 GENEVA AVENUE

T-Mobile's Third Cause of Action also contends that the City has violated Section 6409 and its implementing regulations with respect to T-Mobile's applications to modify wireless facilities located at 5630 Mission Street, 1135 Evans Avenue, and 965-985 Geneva Avenue in San Francisco. Unlike in the case of the 491 Haight Street and 3000-3019 Mission Street locations, the wireless facilities located at 5630 Mission Street, 1135 Evans Avenue, and 965-985 Geneva Avenue were approved by the Planning Department as "macro" facilities, through the normal application of San Francisco's zoning processes under the Planning Code. Because these approvals came as the result of public hearing processes, San Francisco residents have already had the opportunity to be informed that significant wireless facilities are located at these locations, and have had the chance to offer input into the use of these properties for that purpose. (Watty Decl., ¶ 18.) Accordingly, defendants do not oppose T-Mobile's motion with respect to these locations, to the extent it seeks a judicial declaration that these locations have "deemed granted" status and must be treated as legal by defendants.

### IV. THIS COURT SHOULD DENY T-MOBILE'S MOTION TO THE EXTENT T-MOBILE REQUESTS THIS COURT TO ORDER DEFENDANTS TO AFFIRMATIVELY ISSUE PERMITS FOR ANY LOCATION

In its prior Motion for Summary Judgment and Motion for Preliminary Injunction, T-Mobile requested not only that the Court declare that its applications on which the City had not acted with the 60-day "shot clock" have "deemed granted" status, but also that the Court issue an order commanding the City to "immediately issue permits" for all of T-Mobile's "deemed granted" applications. (Mtn. for Sum. J. [ECF 29] at 1:10-12; Mtn. for Prelim. Inj.[ECF 31] at 22:6-8.) Defendants opposed that request, and the Court, the Honorable Susan Illston, declined to award T-Mobile such an order affirmatively mandating the issuance of permits by City permitting agencies. Instead, the Court simply ordered that T-Mobile's "deemed granted" applications "are now to be treated as granted in accordance with … the Spectrum Act," and "shall be treated as legal by defendants herein." The Court also ordered that T-Mobile's "deemed granted" applications "are in law as effective as granted

applications," and estopped defendants from in any way preventing T-Mobile from proceeding with installations for those "deemed granted" applications. (ECF 44.)

Undeterred, T-Mobile again asks this Court to order, *inter alia*, that the City affirmatively "issue to T-Mobile permits for all Applications" identified in T-Mobile's Third Cause of Action," and "approve and grant permits" for all Eligible Facilities Request applications identified in T-Mobile's Motion. (Proposed Order [ECF 61-3].) But that request is as impermissible a legal overreach now as it was when T-Mobile sought it earlier. This Court should reject T-Mobile's request for such relief now, just as it did in 2021.

T-Mobile's requests for an order commanding defendants to affirmatively issue permits are defeated by *Montgomery County, Md. v. F.C.C.* (4th Cir. 2015) 811 F.3d 121, the leading case examining Section 6409 and its implementing regulations. *Montgomery County* involved a challenge by the named county and other local governments to an order issued by the FCC, which issued the predecessor to 47 C.F.R. § 1.6100 to implement Section 6409(a). The local governments contended "that the Order violates the Tenth Amendment by compelling local and municipal governments to participate in federal regulatory efforts by approving infrastructure permits." Their challenge focused on the regulation's "deemed granted" procedure, "which they characterize as 'direct regulation of the conduct of the locality's legislative power, which the Tenth Amendment prohibits.'" (*Id.,* 811 F.3d at p. 127.) Several aspects of *Montgomery County* are directly relevant here.

First, the Fourth Circuit rejected the Tenth Amendment challenge on grounds that squarely undermine T-Mobile's relief request. "[T]he FCC's 'deemed granted' procedure comports with the Tenth Amendment," the court held, because "[a]s a practical matter, the Order implementing Section 6409(a) *does not require the states to take any action at all,* because the 'deemed granted' remedy *obviates the need for the states to affirmatively approve applications*." (*Id*., 811 F.3d at p. 128 [emphases added].) Instead of compelling a local government to affirmatively issue permits, the court held, "the 'deemed granted' procedure allows the applications to be *granted by default* if the state does not affirmatively approve them within sixty days." (*Id*. [emphasis added].) The court repeatedly stressed that the FCC order and its "deemed granted" procedure were consistent with the Tenth

Amendment precisely *because* "the Order does not require states to take any action at all," and "does not require the states to take any action whatsoever." (*Id.*, 811 F.3d at pp. 128, 129.)

Second, the local governments sought to bolster their Tenth Amendment claim by arguing that "even under a default-grant scenario, it is the state itself that is granting the application," and that therefore "the Order forces states to give collocation applications the imprimatur of state approval." (*Id.*, 811 F.3d at pp. 128-29.) The court rejected that argument. It held that because "these applications are granted *only by operation of federal law*," any imprimatur would that of federal, not local, authority. The local governments "cannot argue that the Order requires localities to exercise their legislative power to grant applications." (*Id.*)

*Montgomery County*'s reading of the FCC rule is consistent with – indeed, is compelled by – the FCC's own statement of its intent in promulgating the regulation that became 47 C.F.R. § 1.6100. When it promulgated 47 C.F.R. § 1.6100 in 2014, the FCC expressly noted that that regulation's limitations on local authority "*do not require State or local authorities to review wireless facilities siting applications*," but, instead, only preempt such governmental authorities from denying permit applications on grounds not in accordance with federal law. (*Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, Report and Order, 29 FCC Rcd 12865, ¶ 213 fn. 593 (2014) [emphasis added].) T-Mobile thus asks this Court to read into 47 C.F.R. § 1.6100 an intent contrary to what the FCC intended and the courts have countenanced.

T-Mobile's efforts to compel San Francisco agencies to affirmatively issue permits stretch the relevant federal statute and regulation beyond the breaking point. We respectfully ask that those efforts be rejected.

## CONCLUSION

Defendants respectfully request that their Cross-Motion for Summary Judgment be granted with respect to Plaintiff's applications to modify wireless facilities currently located at 491 Haight Street, 3000-3019 Mission Street, and 2499 Lombard Street; that Plaintiff's Motion for Summary Judgment with respect to the foregoing applications be denied; and that Plaintiff's request for an order compelling Defendants to affirmatively issue permits, with respect to any of the locations at issue in these cross-motions, be denied.

Dated: July 14, 2022

                                                        DAVID CHIU
                                                        City Attorney
                                                        WAYNE K. SNODGRASS
                                                        Deputy City Attorney

                                    By: /s/*Wayne K. Snodgrass*
                                           WAYNE K. SNODGRASS

                                           Attorneys for Defendants
                                           THE CITY AND COUNTY OF SAN FRANCISCO, and
                                           THE CITY AND COUNTY OF SAN FRANCISCO
                                           DEPARTMENT OF BUILDING INSPECTION